Please call the next case. This is Clause 12-83, Compass Group v. Jeffrey Biermann. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Your Honors? Mr. Slavin, my name is Julie Shum for Compass Group. For the manifest weight issues, Compass Group is content to rest upon our brief, and we'd like to focus our argument to our primary legal issue with the arbitration decision, that of the fee schedule award versus the negotiated rate. As we all know, the Act specifically provides that the employer's liability in a workers' compensation case is limited to the lesser of the negotiated rate, the provider's charge, or the fee schedule amount. In this matter, Petitioner testified that it was his group health insurance provided by Compass Group that wasn't effective as of the date of the accident. It's that negotiated rate set by that particular provider which is found on the face of the bills. We contend that it's this rate where applicable that should apply if the medical continues to be found to be related. At the time of the hearing, we did sign a stipulation indicating the amounts which would be due under the fee schedule if the arbitrator found those bills to be related. That stipulation specifically states, and I quote, that by so stipulating, employer does not waive any objection it may have as to liability or the reasonableness and necessity of said expenses. The stipulation is clear in that it only specifies an agreement as to the amount due under the fee schedule if such was to be found related by the arbitrator. The employer waived none of our defenses with regards to the liability for those amounts in the course of that stipulation, and it was intended merely as a tool to allow the arbitrator to make a more specific award. So what went wrong here then? The arbitrator, what happened? The arbitrator makes no comment on the negotiated rate in his decision and has been affirmed without additional comment by all parties to this point. Who negotiated this rate? This is a medical, this is a group health insurance. Yes. It is the employer's group health insurance rate evident on the face of the bills. And is that what the statute in 8A is referring to when it refers to a negotiated rate, the group health insurance? Yes. The case law also indicates, such as in the Tower Records case where it was found at that time it was right after this change had been made to the act to add the negotiated rate in. That case specifically found that the rates used by the group health insurance. Of the wife of the employee. Right. Of the wife of the employee in that case. This case there's a more direct relationship. It's a totally different issue than what we're talking about here though, right? Did the amendments to the act allow an employer to negotiate insurance rates for workers' compensation cases? Outside of the negotiation that. Outside of group health insurance. The way I read the cases as they've come down to date, I'm sorry. They seem to imply that it is not the employer's direct negotiation, but the employer's negotiation through their group health insurance which comes to this negotiated rate. Okay. So the fee schedule stipulation as it was written was to give the arbitrator the only number which is not evident from the face of the bills. Clearly the bills themselves give you the provider's charge. The only negotiated rate the employer has ever asked for was the negotiated rate evident on the face of those bills. The only number which the arbitrator then lacked would be the amount due under the fee schedule which he asked the parties to agree to in advance. It is a matter of well-settled law that where a stipulation lays out a fact and then delineates the questions that remain, that stipulation shall control. In this case, the stipulation clearly stipulates to and does, and we do not dispute that these are the amounts due per the fee schedule. But we did not, in the course of making that stipulation, waive our arguments with regards to our liability for those rates, including the argument that our liability ends at the negotiated rate as it is the lesser of the two. Perhaps you're making a fine point. In other words, you're saying if the arbitrator found that the claim was compensable, this would be the amount. If the arbitrator found that the claim was compensable on all medical issues, the arbitrator awarded the fee schedule amount of slightly over $1 million. What we are arguing is that the proper amount should also take into account the negotiated rate where it was applicable, and that the proper award should therefore be the $535,821.43 as we argued in our brief. The arbitrator makes no mention of the negotiated rate in his decision and ignores it in his calculations, leaving only the very specific award of this amount under the fee schedule. So was the arbitrator confused by your stipulation? As far as I can tell, either the arbitrator did not take into consideration the negotiated rate as it was on the face of the bills, since he makes no comment on it. His medical section is very brief. Or the arbitrator conflated the stipulation as to the amount allowed under the fee schedule with the employer's liability for the same, despite the specific statement in the stipulation saying that we do not waive any objection we have to liability for this. What does this stipulation really say? It's two sentences, right? Yes, approximately. What if I said it says nothing? Read it. I mean, what does it say? The specific language of the stipulation is that the parties hereby agree and stipulate that the following medical expenses would be due and owing pursuant to 8A and the fee schedule provisions of 8.2 of the Act in the event the matter is found to be compensable. However, by so stipulating, employer does not waive any objection it may have as to liability or the reasonableness and necessity of said expenses. In brackets? Yes. Or the reasonableness and necessity of said expenses. Is there some inconsistency there? He said these are the expenses found to be compensable. Yes. And we made the compensability argument in our brief as a manifest weight issue. What I am arguing now is simply that the amount of the medical awarded, the arbitrator did not write his award that this is the amount due per the fee schedule or the negotiated rate or per section 8.2 of the Act. He specifically awards the medical as a specific $1 million number. And it's our contention that that number is incorrect. If you are to award the specific number in this case, then the negotiated rate has to be taken into account since per the language of the Act, the employer's liability is capped at the lesser of negotiated rate. So are you saying that the award from the arbitrator was not consistent with the stipulation or was consistent? Not consistent with the stipulation. It was too high? Yes. It awarded only the fee schedule amount and did not take into account the negotiated rate for any of the bills which had already been processed by group health insurance. Opposing counsel would be saying no, the stipulation says you've stipulated the fee schedule. Except the stipulation specifically says that we do not waive any objection that we have to our liability to those expenses. And one of our defenses to our liability for those expenses is the negotiated rate. That's why I'm asking the question, what does the stipulation mean? The stipulation is intended as a tool for the arbitrator to be able to make a more specific award that the arbitrator requested. It means nothing except these are the. Ma'am, the stipulation says you can have $10, but if I don't want it, I won't give you $5. That's what this says. This is meaningless. The issue is not liability for the expenses. It's the amount of the expenses. Liability for the expenses. They're liable for the expenses. He determined that. You stipulated away the amount you have to pay. I stipulated only to the amount due under the fee schedule. Yes. Now, if you add all these up, do they fall under the schedule, the fee schedule? Forget about the negotiated rate. They fall under the fee schedule? We are not disputing that those are the amounts due per the fee schedule for the bills. So what you said, parties agree and stipulate that the following medical expenses would be due in owing pursuant to 8A and the fee schedule provision of 8.2 of the act in the event that the matter is found to be compensable. But by doing so, we did not waive our entitlement to the negotiated rate under Section 8D2. Oh, I think you did. You're saying the second sentence is what you're hanging your hat on. Yes. Okay. So what do you mean, okay, you're not waiving any objection it may have as to liability, right? Correct. Or the reasonableness and necessity of said expenses. Okay. Correct. He didn't go to Dr. Jones for the injury he suffered here. He went to Dr. Jones because he got hurt playing basketball. That's liability for the expense. It has nothing to do with whether Dr. Jones is, how much Dr. Jones charges. But I would also argue that it may be. If Dr. Jones is determined to have treated him for the injury, which is the subject of this, and you schedule Dr. Jones' amount somewhere in this document, then Dr. Jones gets paid that amount. But under the act, we have the entitlement to the negotiated rate as well, and we reserved our liability arguments. Well, yeah, you do. Our liability arguments include our liability as to our liability for the amount of the expense as well. The problem is it's that second sentence. You think it's a reservation, right? Yes. And obviously the interpretation of my colleague here would suggest it's not a reservation. So where do we go from here? The stipulation has to be read in conjunction with the act. There's nothing in the stipulation that waives the section of 8.2 that entitles us to the negotiated rate. It specifically says that it would be due and owing per the fee schedule provisions of 8.2. It was found to be compensable, and it was found to be compensable, right? Yes. I think there's an inconsistency in there as well. I mean, the answer to this is you should never have had the stipulation to begin with. If you wanted the protection of the negotiated rate, you didn't have to write anything. And you would only have to pay for those expenses that were found to be reasonable and necessary to treat the petitioner for the injury suffered out of him in the course of his employment. You didn't need this. Not unless you intended to freeze your liability into the schedule that you had in the document. The fee schedule amounts are the only amounts that are not evident on the face of the bill. The arbitrator requested a fee schedule stipulation so that presumably he has those to compare. The arbitrator does not lay out his thought process as to the medical award and his decision. Do you have to give an arbitrator a stipulation? You have to? No. The arbitrator requested one. No? Okay. But this stipulation did not waive any portion of 8.2 pursuant to the negotiated rate. I think it's also a fair interpretation of the first sentence as well, since the first sentence specifically says these are amounts that would be due and owing under the fee schedule provisions of 8.2. It does not say that these are the amounts that would be due and owing after analysis of the fee schedule provisions and the negotiated rate and the provider's charge. But if that were the case, you wouldn't need this at all. Right. I agree. You just don't need it at all. Why did you sign it? No. I do not have an appropriate answer for that one. Other than that, it was at the request of the arbitrator. Okay. I think we're beating a dead horse on this one. Yeah. For the rest of the arguments responded, we are content to rest upon our brief of the manifesto issues, unless there's any more questions. I don't believe there are. Thank you, counsel. Thank you. Counsel, in response? Your Honor, could you please clarify for me that I have five minutes on rebuttal? Or, well, you usually try to contain it, right? Yes. You're talking about the medical for the house? You're talking about your cross appeal. Cross appeal. Yes. Okay. So we'll just limit argument right now to the medical fee schedule? Yes. I was going to say. Yes. Thank you. I'll have ten minutes. I have more than that. Thank you, Judge. Good afternoon, counsel for the employer. My name is Mark Slavin, and it is my distinct pleasure and honor to be representing Mr. Jeffrey Berman. Thirty years ago, when I was first introduced to the appellate court by a Mr. Beck walked me back to his office. He said, you know what the import of the appellate court is? And I was a brand new law school student. Of course I did. He whispers, stare decisis. I came to understand and appreciate what that meant as a practicing attorney now for 26 years. Some level of predictability to be able to consult my clients. When the Bermans first appeared in my office, you know, it was actually the most unbelievable story that I had heard of practicing workers' compensation law for decades. It's not possible that when I first introduced myself to them and them to me that I would be here before your honors talking about this case. I said it would never be to the appellate court. What happened was I stipulated work-related injury. I saw that at the moment of arbitration. Did you see? Stipulation. Accident. Yes. On March 19, 2009, my client lifted a case of coke and the back went out at him. I took painstaking measures to develop a concise record to bring before you of the six days that went on going to doctors, seeing the chiropractor, doing everything he needed to do to seek medical help. And I presented that to you. And what happened was that on the last day before he's rushed emergently to the hospital, you saw this in the record. He wakes up in excruciating pain. On his way down to work, he falls in home, taking care of making careful steps down and down, tumbles down the remaining stairs. This is a nature and extent case. Would you get to the point of whether you stipulated or you didn't? We only have a limited amount of time. I am sorry, your honor. I was jumping to a different argument. You're right. There was absolutely a stipulation. And not only the arbitrator didn't impose it on us. He said in the record, come back to us. If you guys can't work this out, come back and we'll deal with it. We didn't have to deal with it because the stipulation is on its face, plain and simple. We presented the medical fee schedule. And they don't like the benefit of the bargain now. And that benefit of the bargain is when the liability pursuant to the fee schedule is $1,244,000 and change. And I submit that they never raised that issue to the commission. Where is it to the commission that they were balking at that stipulation? It wasn't until later. So how do you read the stipulation? She's saying they have a right to step back from it because it gives them the right to reserve argument about causation. I thought that that was made up of whole cloth. I thought that that was a spurious argument. I think that this on its face demonstrates the magnitude of what is being going on here since the beginning of this case where they denied any workers' compensation benefits. It says the parties hereby agree and stipulate that the following medical expenses would be due and owing pursuant to 8A under the fee schedule, provisions of 8-2 of the Act, in the event the matter is found to be compensable. It was found to be compensable. Stop. There it is. So what does this other language mean? That's the question. No. It means that, however, by so stipulated, respondent does not waive any objection to have as to its liability or to the reasonableness and necessity. Then come on in at that moment and introduce evidence that you have, employer, to show us anything that you want to do to undermine what it is being said. And that was never done. Nothing. Zero. You let the arbitrator decide it and now they're trying to backtrack from his part. Absolutely. And they were invited, judge, if we can't work out the stipulation, then come back to me with your proposed decisions. It says that in the record. The arbitrator invited. He didn't shove this down our throat. This is negotiations going on up to the moment of trial about how we were going to deal with $1,600,000 of incurred medical bill, $1,500,000 of medical bills that are going. I mean, it was hard to get Mr. Berman to come in and testify. It was him. It took him a year to get out of the hospitals and the convalescent centers. It was his first time to get back home in over a year. So medical bills are accruing, accruing, accruing. They have time. So I'm going to limit my argument to say on its face. There is no wiggle room. There is no misunderstanding. There's no vagueness. There's no ambiguity. And the consul, the employer, was invited. If there was any confusion, there was any concern about what it is that they were stepping into and come on back and we'll have a record and we'll entertain discussion and argument and introduce evidence. It doesn't exist. That would be my argument to the very specific issue. You're not saying that if there was evidence that we've got, you know, sticker price and we've got real price, right? That's right. Not in the appellate court. Not in the record. No, we have one price, which is what was stipulated to, what the arbitrator found, and what the commission affirmed. That's the cost of the medical bills to date under the application of the fee schedule that they said we agreed to. Counsel, on an unrelated matter, but one of the issues raised by your opponent here regarding causation and all of the medical conditions, and there are a number of them that we're talking about here, but your opponent indicates there are no opinions linking the hepatitis, the liver problems, the kidney problems, or kidney stones to the accident. So are there, is there medical testimony, is there evidence in the record establishing a linkage between those conditions and the accident? The commission found, Your Honor, that from the moment he arrives emergently to the moment that the record is made, that the totality of every medical condition that this man's metabolic mess was as a consequence of the sepsis that exploded from his elbows, shutting down his organs and organs and organs, and yes, there isn't an iota, there isn't a mention in any of the volumes of medical  that he had a link to the sepsis, and that's why he's unrelated. And it goes to the earlier argument of the chain of events. Well, I don't want you to flip the burden here. In terms of the burden, can you point to evidence in the record indicating that, A, hepatitis was caused as a result of this accident? Hepatitis, I am not prepared as I stand before you with the thousands of pages, but with your invitation, I could go with reasonable dispatch to supplement that inquiry with a written response. Well, there was recovery made for medical services related to the hepatitis, the liver problems, kidney problems. Yes. And the commission has found that everything was related. In some way, shape, or form, it is there, and the medical records don't disavow that. Your Honor, this man's organs were shutting down one after the other, after the other, after the other, months on a trip, unconscious. Yes, I submit to you that the record supports that every medical condition from that moment when he came cascading down the stairs to the moment where he finally gets home is a work-related event. It's a natural sequela, and there's nothing in the evidence to the contrary. And to your point, Judge, when you take a look at opposing counsel's brief, as I write in our reply brief, the evidence they cite isn't even accurate. For example, the employer erroneously claims that Dr. Patel opined that the conditions were unrelated with no causal connection to the work accident or the fall. The employer's citation for this information leads to the employee's exhibit number 18, the medical bills from North Shore Nephrology. No medical records are included. I'm telling you that this is smoke and illusion, that this argument is not just. It's not proper. The record is solid. The information that you're picking up on, as I articulated in my reply, is inaccurate. Page 6 of my reply brief. All right, let's get to the home modifications. Yes, sir. You got Ross' appeal on that, didn't you? Yes, I did. I appealed that issue because of the following. I provided a certified record of the two qualified therapists working for Manor Care. Manor Care is the facility where my client was rehabilitated between hospital transfers and spent the bulk of his time there at Manor Care. His therapists say home improvement modification for $10,200 was necessary. Contractor came out and made simple modifications. Stairway, lift, thank you. And then a quick modification in the bathroom. Nothing cosmetic, nothing beautiful. I introduced that, those photographs, into the record. The arbitrator says, no, it turns out that you didn't have a medical note. You didn't have a medical note for that specific modification? The arbitrator and the commission held that you need a prescription by a physician. And are you judging? It doesn't exist in the law. Does the law require that? No. I've not seen any case ever relied on. The statute doesn't require it. And, moreover, how many times day in, day out of the thousands of cases we give psychologists money, we give physical therapy. These things are going on all the time. Let's cut to the chase because part of it determines what happens on remand if it goes back. Number one, you introduced evidence of two physical therapists that he required these modifications in his home. I did. Because of his injury. Did they introduce any evidence that he didn't require those modifications? No. Is that correct? No. Agreed. So then the commission turns around and said, but we won't give you the modifications because you didn't have a doctor's prescription. So the question becomes, as a matter of law, must there be a doctor's prescription? If the answer to that question is, no, there need not be, the only evidence in the record is the evidence you introduced. The $10,000 is necessary and, therefore, there would be absolutely no reason to remand it. We would just award it. Correct. Okay. And I would agree with that. It was absolutely 100% right. I don't need to rehash that point. 100% in agreement with it. May I address the concerns I have about the penalties and attorney's fees at this moment? Yes, because you are in response mode and it's kind of messed up here. You've got five minutes. Thank you, Judge. What I want to implore is that the employer, the day, so my client leaves, crumpled and bleeding at home, his boss is on the phone saying, where are you? Boss, I'll be right there. The paramedics try to convince him to go to the hospital. He doesn't go to the hospital. He goes to work. He shows up at work, and what happens? His co-worker is working up front in the cafeteria section. He goes, I'm the manager. I'm going to go in the back. That co-worker calls Joyce Berman and says, your husband can't get up. She comes with a friend to the work site, and who's there? The boss who called him up on the phone as he lied there with the paramedics and said, why aren't you at work? So his boss, Castro, is there, and what does Castro do? He's available to testify.  Nobody testifies for the employer. Castro, with the security guard, with another unidentified human being, helped take him by an office wheelchair and wheel him to the car. It took him hours, the unroboted testimony, to get him around the commercial complex, to get him to the car so he can go to the hospital, and that's really the last time he had consciousness until months later when he wakes up. And the testimony before that is he was on the phone calling workers' compensation for the employer, asking for MRIs, putting them on notice. The medical bills, the $1.5 million medical bills, all go to the insurance carrier, and they're arguing no notice? Well, the heck of the matter is, do you see what they wrote in their brief, in their argument? They write that they were doing, the first evidence of a defense is when Dr. Kael writes a report a year after this accident. They're making an argument in support of penalties and fees. Pardon? Was there penalties and fees awarded in this case? No, there wasn't. Well, then what are we arguing about? By cross-appeals, how could they possibly come here? How could they not be imposed as a matter of law when they stipulate to accident, and they have actual notice, and there's no payment of benefits? They stipulated to accident, Judge. Did you argue for penalties and fees? I did argue for penalties and fees. Okay. I did. That's my brief. The abstract contains my final petition for penalties and attorney's fees before we began. And the commission said no penalties and fees. The commission said there's an honest dispute of facts and law. Facts, they stipulated to accident, and what about the medical causal connection opinion? The only opinion they ever had was a year after this by a medical report, and did you see what the report said? It said lifting a case of Coca-Cola didn't cause the sepsis that shut down his organs. It wasn't ever the case. As a matter of fact, counsel here was at the evidence deposition of Dr. Sherwood, and she, in her recantation of the evidence, she understood in the months before the arbitration proceeded the nature of the case. The sepsis was caused when he fell down the stairs, and the bursa bursted on his elbow. She said, so that's what you mean? Did they come back for a report? Did they come back for anything to try to change the defense? No. There's no defense to this case. That's the hellacious matter, and I get it. To award penalties, and it's ministerial. If you do the math, it's just ministerial. It's a $1,018,000 penalty. Two years ago. Counsel, what issue did you appeal on? I appealed. Home modifications. Is that the only issue you appealed on? Sorry? What issue did you raise on appeal? The home modification and the penalties and attorneys' fees. And 19L, you know, 19L section 16 and 10. Because there is no reasonable good faith justification for the nonpayment of any benefits in this case, Justices, I would ask that this is a ministerial function. And, again, I go back to something that I began with is the precedential nature. If an employer can conduct themselves in this manner, have actual notice, the supervisor reeling a man to a car, it takes him an hour to get there. A million dollars of medical bills are coming to the employer's group health carrier. And it takes a year. Their brief said, we were investigating, and after we got Dr. Kahl's report, thereafter, we had a defense. You didn't have a defense for a first year. Do you want me to point that out in her brief where she argues that? I'd be happy to. Page 29 of her brief. While investigating the claim, the employer sought the opinion of Dr. Kahl under Section 12 of the Act. The employer thereafter reasonably relied upon the opinion of Dr. Kahl. Page 29. Thereafter, Dr. Kahl's report dated March 2, 2010. Date of accident, March 19, 2009. Your Honors, this is a year. It's wrong. The employer, this is against the manifest weight. And I understand it takes a great deal of intestinal fortitude at this day and age to impose on an employer a million-dollar penalty. The facts of this case don't justify it. Thank you, Counsel. You'll have time on your end. I have a couple of minutes left? Yes, a couple. Thank you very much, Judge. You normally have five, but because of the prosecutable conviction, five. Thank you, Your Honor. With regards to the negotiated rate, we did raise it at the commission. We have raised this issue at every level of appeal so far. As far as the employer not presenting evidence, the employer did not present a separate group health inventory because one was not needed. The only negotiated rate we have ever claimed is the negotiated rate as is evident on the face of the bills as submitted by the employee into evidence. The bills say paid by Blue Cross, paid by group health. It is very clear from the face of the bill, and the employer did not think it necessary on top of that to put in a separate group health inventory since we were not requesting any additional reductions. As for the kidney conditions and the hepatitis, Dr. Kahn, who is the treating physician and specialist, specifically states that those conditions are related to Petitioner's diabetic neuropathy. There are no medical opinions in the record at all relating the kidney conditions in any way, shape, or form to the sepsis, to Petitioner's back injury. Even if those are related, the employer still submits that there is no causal connection for the underlying kidney and liver conditions. And is the diabetic neuropathy a condition that he had before this accident? He was not treating for diabetes before, but there's also no relating it to the sepsis or to any of the other conditions. It's something that's essentially found while he's in care. Is there any medical report or anything indicating that he had diabetes or diabetic neuropathy before this accident? There's not. As for the home modifications, I think this is a matter of a qualified medical professional being needed to render an opinion. Under the terms of the… What authority do you have that says that? Is there any case you can refer us to? Well, the Act says that we are required to provide the medical care as recommended, and it has been interpreted by the courts to mean the medical care prescribed by the doctors and the treating providers. I agree that in the case of physical therapy, the employer would therefore be liable by physical therapy rendered by a physical therapist. There is nothing in the licensure of a physical therapist and Petitioner has presented no evidence to the effect that the licensure of a physical therapist allows them to make any sort of prescriptions, including a prescription for home modification. So I think it says they can't. The license does not include the authority to prescribe. That is an authority that specifically has to be granted by a medical board. A physical therapist can recommend four more weeks of physical therapy, but it's not in order until a physician reviews it. Okay. So your logic is, so I can understand, is that these home modifications are medical care? Yes. And that medical care, you're only liable for medical care that is prescribed, correct? Mm-hmm. And that licensure determines prescription? Well, that licensure determines the ability to render a prescription, yes. Well, I tried to shorten it. I mean, you'd have a difference if a psychologist attempted to prescribe Ativan. That is outside the ability of their licensure. A psychologist is not granted by the state boards the ability to prescribe medication. A psychiatrist is. Is a prosthetic something that needs to be prescribed? In my experience, I've never seen a prosthetic that is not prescribed by an orthopedic physician. How about an orthotic? The same. I've never seen an orthotic which is not prescribed first by a qualified foot doctor,  How about a splint? Splints are also issued by hospitals. People can voluntarily put on a splint just as a person could voluntarily modify their home, but that doesn't make the employer liable for it. A physical therapist be able to prescribe? I mean, prescribed is simply a word that can be defined. And if you look up the dictionary definition of prescribed, it doesn't indicate that it is only something that can be done by someone who is a professional, who is certified in a particular area. So you start the shading into things that, you know, aren't necessarily something that jump to mind as being prescriptions such as medication or therapy, and you get into something like this. This is actually one of those areas that would be a case of first impression, true? I agree. We could find no case law as to the substance of the home modification matter. But your position back to where I was trying to get your logic here is it's licensure. It's tied into licensure. Our logic is that when you present the home modifications as being recommended by the physical therapist, because they are physical therapists in this case, you have to take into account the extent of the licensure. In a different scenario, given a different set of facts, there could be a different argument. As to the facts in this case, they are presenting the home modifications and claiming them because the physical therapist involved in the case made those recommendations. They presented no evidence that a doctor reviewed those or recommended them. They presented no evidence that a doctor even recommended that the house be reviewed for those modifications. Well, that's the rub. The commission decided as a matter of law that it couldn't be, it had to have some kind of a prescription. But the arbitrator and the commission never cited your reasoning, did they? No, they did not. Well, they basically dismissed it as something that automatically occurred after the decision. So maybe it should be remanded for them to evaluate it. Let me ask you a question so that we don't get into this remand business. They introduced evidence that these modifications would cost $10,000 and some odd. Is that correct? Yes. And that's what their experts said was necessary and how much it would cost. Is that right? That was how much it had cost their contractor to perform. Okay. To put in those modifications. You didn't introduce any evidence that those modifications weren't necessary, did you? No. As we mentioned in our objection to the hearing. Or that they paid too much money for it. No. Or that he didn't need it. No. So now it comes down to the question of whether, as a matter of law, he can be denied his right to recover these benefits merely because he didn't have a doctor's prescription for them. Doesn't it? But by the same argument, if the physical therapist said they could not work, could they collect TTD benefits without being taken off by the appropriate professional? That's not what I asked you. That's not what I asked you. What we come down to here, because of the way the proof went in and what didn't go in, we only have to decide the legal question is whether, as a matter of law, one cannot recover for home remodeling expenses unless those expenses are ordered by a physician. Correct. And if the answer to that question is no, they can't recover, then we affirm it. And if the answer to that question is yes, they can recover it, even though it's not prescribed by a doctor, we don't have to send it back. He just gets the $10,000, because you didn't offer any counter-evidentiary material, right? Yes. The logic there is correct. Our argument remains that the physical therapist does not have within their licensure the ability to make these prescriptions. The issue is the question of does he get it or doesn't he get it, based upon the recommendation of physical therapist opposed to physician. Yes, sir. What is your understanding of the scope of the physical therapist's ability to, we'll go with the common ordinary definition of prescribed? My understanding is that a physical therapist has no ability to prescribe whatsoever. A physical therapist can make recommendations, but since physical therapy is a very limited licensure under the medical boards, physical therapy does not have the ability to prescribe. It's a separate branch of a license. Okay, so let's say that physical therapy recommends that you never be without a cane. It's a recommendation only. It's not a prescription. It's not a binding medical opinion. It is not the same level of physical therapy. So your answer is that liability for the cost of that cane can only come about if there is a physician who prescribes a cane. Correct. It's to a lesser degree the same problem you have with the physician's assistant. A physician's assistant's opinions are only valid once they've been reviewed by or in conjunction with a physician. Their licensure prohibits them from making any prescriptions. They are unallowed to have care without a supervisory physician. So your view is that the claimant must go one step further and show that a doctor has prescribed. You do not have any response burden to say that that's not prescribed. Not until they've shown that it is qualified medical care for which the employer can be liable. Counsel, I'll suggest that this issue has been addressed in medical malpractice. There's a case, a second district case, Compton v. Yabulas, UBI, LLUZ, and the citation is 353, ILF 3863. But in that case, the second district court indicated that a non-physician could testify to damages in regards to home modifications in the absence of physician testimony. So perhaps that would provide some basis for the claim here where a physical therapist suggested modifications, even though a non-physician would be appropriate. I haven't, unfortunately, had the chance to review that particular case, although I would question whether or not a physician ultimately reviewed those, that claim for damages as part of the case, since that would be our contention here. I'm not saying that the physical therapist cannot make recommendations. Of course they could. Someone off the street could say, look, you seem to need stairs. Well, I'll just read to you from that opinion, and this is at page 867. Quote, we agree with plaintiff that once her physicians testified that her condition was caused by defendant's breach of his duty to diagnose and treat plaintiff, there was an non-physician regarding treatment options that did not require a physician's prescription. So in that case, they found that the home modifications did not require a physician's prescription, and there was no physician's prescription. In this case, we have no physician saying he's going to be wheelchair-bound when he's home. He was in a wheelchair for a time period. He was using a cane for a time period. There's no physician saying that even that this needs to be evaluated that was presented by Petitioner. Can I just address the penalties very quickly, or am I out of time? As far as the penalties, Petitioner was called by his employer the morning of the fall, which was not stipulated to. The only stipulation was to the lifting of a case of coke, which caused back pain. But the morning of the fall, Petitioner was called by his employer because he had the only set of keys. He testified at trial that he was not pressured to come into work. He volunteered to come into work because he had the only set of keys for the facility. He goes into work. He works for several hours. He goes to the hospital. And that is the last that the employer hears from him. The scattered medical records which the employer was able to gather, since none were provided by Petitioner and there is no evidence that Petitioner ever contacted an employer between then and the two days before trial when they sent four boxes of medical records, was scattered information. He has sepsis. How would he have sepsis related to a fall? His treating physicians are debating the source of the sepsis for months after the initial incident. Dr. Hegarty, when he reviews the CT scan, says that of the spine, there may be a possible injury of the fall, but no abscess to which we can trace the sepsis. The infectious disease doctors continually state we don't currently know the source of the sepsis. This goes on and on. Dr. Sherman renders his opinion in early 2010, at which point we request his deposition. We also gather the medical records during that time. It's not like we were vexatiously denying it without trying to take action. Unfortunately, we provided Dr. Kale with three boxes of medical records and you don't get a report overnight. We received the report on March 2nd, which was the best we could do in light of the time it took even the treating physicians to come to a reasonable diagnosis. During all that time, Petitioner's treatment was evolving. Their interpretation of his diagnosis was evolving. There was nothing to indicate to the employer immediately that this was all the fault of this back sprain that he initially had. There was no testimony from Petitioner that he told his employer when the manager called him the morning of the fall, even that he fell down the stairs. Petitioner's testimony was just that Mr. Castro called him to get the keys, to see where he was, to find out about opening the facility, and he said he'd come in and open the facility. There was no testimony that he told Mr. Castro that he fell down the stairs. And the only subsequent testimony is that he tells them he can't get up, I'm not feeling well, and then they help him to go to the hospital. There is no reason for the employer to directly connect this to a back sprain, which happened six days before, and therefore we would ask the affermal of the denial of penalties in this matter. Thank you. Counsel? There has been no demonstration as to a good faith basis why a dollar hasn't been spent paying for some workers' compensation benefits. None. Two, I would ask that you don't remand this case for further proceedings or information necessary to make a disposition of this case. I don't believe the state of the law in Illinois will require expert opinion about simple activities of daily living, how you can move in your home. It's not necessary. A man testified in a wheelchair with braces on. The pictures in the record show that. The point is the professionals that were involved in this day-to-day care has demonstrated in this record said home improvement necessary, nothing cosmetic was done just to get him back home. I think that we've made our case. Thank you, Justices. Thank you, Counsel, both for your arguments in this matter. It will be taken under advisement that a disposition shall issue.